**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**No. 08-215C**
**(Chief Judge Damich)**

---

**NORTH HILLS TERRACE, INC.,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# DEFENDANT'S MOTION TO DISMISS

---

**GREGORY G. KATSAS**
**Assistant Attorney General**

**JEANNE E. DAVIDSON**
**Director**

**PATRICIA M. MCCARTHY**
**Assistant Director**

**RUSSELL A. SHULTIS**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**Attn: Classification Unit, 8th Floor**
**1100 L Street, N.W.**
**Washington, D.C. 20005**
**Telephone: (202) 305-7571**
**Facsimile: (202) 305-7643**

**Attorneys for Defendant**

**OF COUNSEL:**
**CHRISTOPHER R. OPFER**
**Trial Attorney**
**Department of Housing & Urban Development**
**Office of Litigation**
**500 Zack Street**
**Suite 402**
**Tampa, FL 33602**

**August 29, 2008**

# TABLE OF CONTENTS

**PAGE(S)**


STATEMENT OF THE ISSUES ........ 1

STATEMENT OF THE CASE ........ 2

STATEMENT OF THE FACTS ........ 2

A. Statutory And Regulatory Background ........ 2

B. North Hills Terrace ........ 4

ARGUMENT ........ 5

I. THE COURT LACKS JURISDICTION TO GRANT NORTH HILLS'S REQUEST FOR GENERAL DECLARATORY AND INJUNCTIVE RELIEF ........ 5

II. NORTH HILLS HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED BECAUSE THE PRAC EXPRESSLY LIMITS THE AMOUNT NORTH HILLS MAY RECEIVE FOR VACANCIES ........ 10

CONCLUSION ........ 17

## TABLE OF AUTHORITIES

### CASES

PAGE(S)

Adde v. United States,
81 Fed. Cl. 415 (2008). .... 7

Alaska Pulp & Lumber Co., Inc. v. Madigan,
2 F.3d 389 (Fed. Cir. 1993).... 11

Arizona v: United States,
F.2d 855 (Ct. Cl. 1978). .... 11

Associated General Contractors v. Cal. State Council of Carpenters,
459 U.S. 519 (1982).... 10

Bell Atl. Corp. v. Twombly,
127 S. Ct. 1955 (2007). .... 10

Bowen v. Massachusetts,
487 U.S. 879 (1988).... 8

Fed. Nat'l Mortgage Ass'n. v. United States,
379 F.3d 1303 (Fed. Cir. 2004).... 6

Firestone Tire & Rubber Co. v. United States,
44 F.2d 547 (Ct. Cl. 1971). .... 10

Foley Co. v. United States,
11 F.3d 1032 (Fed. Cir. 1993).... 11

Gibbons & Kelly v. United States,
2 U.S. Cong. Rep. C.C. 29, 1856 WL 4062 (Ct. Cl. July 25, 1856). .... 12

Godwin v. United States,
338 F.3d 1374 (Fed. Cir.2003).... 6

Gould, Inc. v. United States,
935 F.2d 1271 (Fed. Cir. 1991).... 11, 15

Hishon v. King & Spalding,
467 U.S. 69 (1984).... 10

Hunt Constr. Group, Inc. v. United States,
281 F.3d 1369 (Fed. Cir. 2002)........................................................................ 11

Indium Corp. Of America v. Semi-Alloys, Inc.,
781 F.2d 879 (Fed. Cir. 1985)........................................................................ 6

J.W. Bateson Company v. United States,
450 F.2d 896 (1971)........................................................................ 11, 13

James v. Caldera,
159 F.3d 573 (Fed. Cir.1998)........................................................................ 7

Jowett, Inc. v. United States,
234 F.3d 1365 (Fed. Cir. 2000)........................................................................ 11

Kanemoto v. Reno,
41 F.3d 641 (Fed. Cir. 1994)........................................................................ 8

Katz v. Cisneros,
16 F.3d 1204 (Fed. Cir.1994)........................................................................ 7

Keco Indus., Inc. v. United States,
364 F.2d 838 (Ct. Cl. 1966). ........................................................................ 11

Kennedy Heights Apartments. Ltd. v. United States,
48 Fed. Cl. 574 (2001). ........................................................................ 15

Kokkonen v. Guardian Life Ins. Co. of Am.,
511 U.S. 375 (1994)........................................................................ 5

Massachusetts Port Authority v. United States,
456 F.2d 782 (Ct. Cl. 1972). ........................................................................ 10

Massie v. United States,
226 F.3d 1318 (Fed. Cir. 2000)........................................................................ 7

McAbee Constr., Inc. v. United States,
97 F.3d 1431 (Fed. Cir. 1996)........................................................................ 11, 15

Ex parte McCardle,
74 U.S. 506 (1868)........................................................................ 7

McNutt v. General Motors Acceptance Corp. of Indiana,
298 U.S. 178 (1936)........................................................................ 7

Nat'l Air Traffic Controllers Ass'n v. United States,
160 F.3d 714 (Fed. Cir. 1998)........................................................................ 8, 9

National Leased Housing Assoc. v. United States,
32 Fed. Cl. 762 (1995), aff'd, 105 F.3d 1423 (Fed. Cir. 1997). ...................................... 15

Nippon Steel v. United States,
219 F.3d 1348 (Fed. Cir. 2000)........................................................................... 7

Palmer v. United States,
168 F.3d 1310 (Fed. Cir.1999)............................................................................ 6

Pennington Seed, Inc. v. Produce Exchange No. 299,
457 F.3d 1334 (Fed. Cir. 2006)........................................................................... 7

Puget Sound Energy, Inc. v. United States,
47 Fed. Cl. 506 (2002). ..................................................................................... 7

RHI Holdings, Inc. v. United States,
142 F.3d 1459 (Fed. Cir.1998)............................................................................ 6

Sebastian v. United States,
185 F.3d 1368 (Fed. 1999)................................................................................. 6

Skelly Oil Co. v. Phillips Petroleum Co.,
339 U.S. 667 (1950)......................................................................................... 9

Smithson v. United States,
847 F.2d 791 (Fed. Cir. 1988)........................................................................... 15

Steel Co. v. Citizens for a Better Environment,
523 U.S. 83 (1998)........................................................................................... 7

Taylor v. United States,
303 F.3d 1357 (Fed. Cir.2002)............................................................................ 7

Tchakarski v. United States,
69 Fed. Cl. 218 (2005). ..................................................................................... 9

Thomas v. United States,
34 Fed. Cl. 619 (1995). ..................................................................................... 6

Ultra-Precision Mfg., Ltd. v. Ford,
338 F.3d 1353 (Fed. Cir. 2003)........................................................................... 6

United Pac. Ins. Company v. United States,
497 F.2d 1402 (Ct. Cl. 1974). .......... 11, 13

United States v. King,
395 U.S. 1 (1969). .......... 6, 7

United States v. Sherwood,
312 U.S. 584 (1941). .......... 6

United States v. Testan,
424 U.S. 392 (1976). .......... 6

Voisin v. United States,
80 Fed. Cl. 164 (2008). .......... 7

Whalen v. United States,
80 Fed. Cl. 685 (2008). .......... 10

**STATUTES**

12 U.S.C. § 1701c. .......... 2

12 U.S.C. § 1701q. .......... 2, 3, 4, 15, 16

12 U.S.C. § 1701x. .......... 2

18 U.S.C. § 2201. .......... 5

28 U.S.C. § 1491. .......... 5, 6, 7

28 U.S.C. § 1631. .......... 2

**REGULATIONS**

24 C.F.R. § 891.400-450. .......... 4

**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **NORTH HILLS TERRACE, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 08-215C** |
| **v.** | ) | **(Chief Judge Damich)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"), defendant, the United States respectfully requests this Court to dismiss plaintiff's, North Hills Terrace, Inc. ("North Hills"), complaint. As demonstrated below, the Court lacks jurisdiction to grant the general declaratory and injunctive relief that North Hills seeks. Further, pursuant to the Project Rental Assistance Contract ("PRAC"), North Hills is precluded from receiving additional rental assistance payments for the operating expenses associated with expected vacancies.

**STATEMENT OF THE ISSUES**

1. Whether the Court may award the general declaratory and injunctive relief that North Hills has requested in the complaint.

2. Whether North Hills may receive an additional operating expense payment for expected vacancies pursuant to the PRAC, which limits the payment of operating expenses for vacancies to 50 percent of the operating expense of each unit for the first 60 the days of the vacancy.

## STATEMENT OF THE CASE

North Hills filed an Amended Complaint for Declaratory Judgment and Breach of Contract ("Compl.") on April 28, 2002.[1] North Hills alleges that the Department of Housing and Urban Development ("HUD") unlawfully refused North Hills' request for approval of a rent increase at its HUD-assisted rental property because of vacancies at the property. Compl. ¶¶ 39, 41, 43-44. North Hills contends that the PRAC provides for a rent increase based upon expected vacancies. Compl. ¶¶ 34-35. Consequently, North Hills requests that the Court issue an order requiring HUD to permit rent increases arising from expected vacancies and to award North Hills all accumulated debt resulting from operating deficiencies since the commencement of operation. Compl. ¶¶ 41-44.

North Hills's requests for declaratory and injunctive relief should be denied because the Tucker Act does not provide this Court with the necessary equitable power. To the degree that North Hills is pursuing a claim for breach, its claims should be dismissed because it fails to state a claim that HUD breached the PRAC.

## STATEMENT OF THE FACTS

A. Statutory and Regulatory Background

Pursuant to the National Housing Act, 12 U.S.C. § 1701 et seq., Congress sought to increase affordable housing by providing incentives to property developers to create and maintain housing that is accessible to low and moderate-income families and individuals. In accordance with those goals, Congress charged HUD with implementing a number of different

---

[1] North Hills initially filed a complaint in the United States District Court for the Eastern District of Arkansas. On January 14, 2008, the district court transferred this case to the Court of Federal Claims pursuant to 28 U.S. C. § 1631.

programs, including those related to the provision of mortgage insurance, grants, and assistance payments. See 12 U.S.C. §§ 1701c, 1701q, 1701x. Section 202 of the National Housing Act was enacted "to provide assistance to private nonprofit organizations and consumer cooperatives to expand the supply of supportive housing for the elderly." 12 U.S.C. § 1701q(b). In particular, this section is intended to increase "the supply of supportive housing that (1) is designed to accommodate the special needs of elderly persons; and (2) provides a range of services that are tailored to the needs of elderly persons occupying such housing." 12 U.S.C. § 1701q(a)(1)&(2).

Pursuant to Section 202, HUD offers housing assistance to participating project owners in the form of capital advances and project rental assistance. See 12 U.S.C. § 1701q(b). The capital advance program provides a project owner with an interest free capital advance covering expected development costs, subject to statutory restrictions. See 12 U.S.C. § 1701q(c)(1). The project owner is not required to repay the advanced funds "so long as the housing remains available for very low-income elderly [individuals] . . . ." Id. HUD also provides project rental assistance to participating project owners in the form of monthly payments intended "to cover any part of the costs attributed to units occupied (or, as approved by the Secretary, held for occupancy) by very low-income elderly persons that is not met from project income." 12 U.S.C. § 1701q(c)(1)&(2) (emphasis added). In return for Section 202 housing assistance, a participating project owner is required to offer all assisted housing for occupancy by very low-income elderly persons for a period of at least 40 years. See 12 U.S.C. § 1701q(d)(1). Generally, tenants in an assisted unit pay rent in the amount of the greater of "30 percent of the person's adjusted monthly income [or] 10 percent of the person's monthly income . . . ." 12 U.S.C. § 1701q(c)(3).

HUD oversees the management and operation of participating Section 202 projects, including the provision of services, development costs, project condition and tenant selection. See 12 U.S.C. § 1701q(g)-(i), 24 C.F.R. § 891.400-450. The terms of that oversight are generally set forth in a regulatory agreement and project rental assistance contract between HUD and the project owner, depending upon the particular HUD assistance provided.

B. North Hills Terrace

North Hills Terrace ("the Project") is a 12-unit apartment property located in Hardy, Arkansas. On October 21, 2002, North Hills and HUD entered into a Regulatory Agreement, under which HUD provided a capital advance payment to North Hills. Compl., Exhibit. C. On June 25, 2003, North Hills entered into the PRAC with HUD. Compl., Exhibit A. In exchange for North Hills' commitment to operate the property as low income housing for elderly individuals or households, section 2.4 of the PRAC provides that project assistance payments shall be paid to North Hills for units "under lease for occupancy." Compl., Exhibit A, § 2.4(a). The project rental assistance payment covers the difference between North Hills' operating expenses and tenant payments as determined in accordance with the "HUD-established schedules and criteria." Id. If a unit is not leased as of the effective date of the PRAC, North Hills is entitled to assistance payments in the amount of 50 percent of the operating expense for that unit for a vacancy period not exceeding 60 days from the effective date. Compl., Exhibit A, § 2.4(b). If an eligible family vacates an assisted unit, North Hills is entitled to vacancy payments in the amount of 50 percent of the operating expense for the first 60 days of vacancy. Compl., Exhibit A, § 2.4(c). Section 2.7 of the PRAC provides that project rental assistance payments will be increased commensurate with adjustments in operating expenses "based on the sum of the costs for operating the project (as approved by HUD) with adjustments for vacancies,

the project's non-rental income, and other factors that HUD deems appropriate." Compl., Exhibit A, § 2.7(a).

On September 21, 2004, North Hills submitted its Fiscal Year 2005 Operating Budget to HUD. In its submission, North Hills requested an increased rental payment based upon increased operating expenses arising from the number of vacancies at the Project. Compl. ¶ 23, Exhibit F. Citing the policy set forth in HUD Handbook 4350.1, HUD informed North Hills that it was not entitled to an additional increase based upon Project vacancies on November 19, 2004. Compl. ¶ 25, Exhibit G.

## ARGUMENT

### I. THE COURT LACKS JURISDICTION TO GRANT NORTH HILLS'S REQUEST FOR GENERAL DECLARATORY AND INJUNCTIVE RELIEF

North Hills contends that this Court possesses jurisdiction in this matter because the Government has waived sovereign immunity by virtue of its Regulatory Agreement with HUD. Compl. ¶ 5. North Hills also seeks a declaration of rights under the PRAC pursuant to the Declaratory Judgment Act, 18 U.S.C. § 2201, and asks this Court to direct HUD to "consider budgeted vacancies when considering budget-based rent increases" and to require HUD "to develop and transmit a form whereby other Section 202 properties may submit" a claim for reimbursement of accumulated debt arising from "insufficient subsidies." Compl. ¶¶ 1, 4, 43, 44. Because North Hills is seeking relief that this Court may not provide, North Hills's request for general declaratory and injunctive relief should be dismissed.

North Hills does not cite the Tucker Act, 28 U.S.C. § 1491, or contend that this Court possesses jurisdiction by virtue of an alleged breach of the PRAC. Theoretically, North Hills could establish this Court's jurisdiction for an alleged breach of the PRAC pursuant to the

Tucker Act. However, even assuming jurisdiction for an alleged breach of the PRAC, North Hills is seeking general declaratory and injunctive relief that is not incidental to a money judgment. This Court does not have the power to provide the relief North Hills requests.

Federal courts have limited jurisdiction possessing "only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). This Court possesses jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. §1491(a)(1). Absent congressional consent to entertain a claim against the United States, this Court lacks authority to grant relief. United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941).

"[J]urisdiction is a threshold issue and a court must satisfy itself that it has jurisdiction to hear and decide a case before proceeding to the merits." Ultra-Precision Mfg., Ltd. v. Ford, 338 F.3d 1353, 1356 (Fed. Cir. 2003). The jurisdiction of the Court of Federal Claims is "prescribed by the metes and bounds of the United States' consent to be sued in its waiver of immunity." RHI Holdings, Inc. v. United States, 142 F.3d 1459, 1461 (Fed. Cir.1998) (citing Sherwood, 312 U.S. 584, 586 (1941)). Waivers of sovereign immunity "cannot be implied but must be unequivocally expressed." Fed. Nat'l Mortgage Ass'n. v. United States, 379 F.3d 1303, 1311 (Fed. Cir.2004) (citing United States v. King, 395 U.S. 1, 4 (1969)). Further, waivers of sovereign immunity are to be strictly construed. Sherwood, 312 U.S. at 590, 61 S. Ct. 767.

A challenge to the Court's jurisdiction is properly raised by a Rule 12(b)(1) motion. Palmer v. United States, 168 F.3d 1310, 1313 (Fed. Cir.1999). In deciding a motion to dismiss

for lack of subject matter jurisdiction, the Court accepts as true all of the facts alleged in the complaint, and draw all reasonable inferences in the plaintiff's favor. Godwin v. United States, 338 F.3d 1374, 1377 (Fed. Cir.2003). The Court may, however, take into account certain "evidentiary matters outside the pleadings" in making this determination. Indium Corp. Of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985); Thomas v. United States, 34 Fed. Cl. 619, 621 (1995). This can include matters of public record, Sebastian v. United States, 185 F.3d 1368, 1374 (Fed. 1999), or materials that a plaintiff has attached to the complaint. See Pennington Seed, Inc. v. Produce Exchange No. 299, 457 F.3d 1334 1342 n. 6 (Fed. Cir. 2006).

Although this Court considers the "true nature" of a plaintiff's claim, regardless of how the plaintiff characterizes it, Puget Sound Energy, Inc. v. United States, 47 Fed. Cl. 506, 510 (2002), the plaintiff bears the ultimate burden of establishing subject matter jurisdiction by a preponderance of the evidence. McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936); Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.2002). If the plaintiff is unable to establish jurisdiction, the only function remaining to the court is that of announcing the fact and dismissing the case. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 95 (1998) (quoting Ex parte McCardle, 74 U.S. 506, 514 (1868)); Nippon Steel v. United States, 219 F.3d 1348, 1352 (Fed. Cir. 2000); Adde v. United States, 81 Fed. Cl. 415, 418 (Fed. Cl. 2008).

The Declaratory Judgment Act does not provide this Court with the power to provide the relief North Hills seeks, either. Through the Declaratory Judgment Act, "Congress enlarged the range of remedies available in the federal courts, but did not extend their jurisdiction." Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 672 (1950). Consequently, a plaintiff seeking relief pursuant to the Declaratory Judgment Act must identify a separate and independent basis

for the court's jurisdiction over such a claim. Id. at 671. ("When concerned as we are with the power of the inferior federal courts to entertain litigation within the restricted area to which the Constitution and Acts of Congress confine them, jurisdiction means the kinds of issues which give right of entrance to federal courts. Jurisdiction in this sense was not altered by the Declaratory Judgment Act.") Thus, even though the Declaratory Judgment Act provides that "any court of the United States" may render a declaratory judgment, it does not give jurisdiction to the United States Court of Federal Claims to grant a declaratory judgment where it does not otherwise exist. Nat'l Air Traffic Controllers, 160 F.3d 714, 717 (Fed. Cir.1998); Tchakarski v. United States, 69 Fed. Cl. 218, 221 (2005).

Accordingly, the Court of Federal Claims generally does not possess the authority to entertain declaratory judgment requests. King, 395 U.S. 1, 5, (1969); Voisin v. United States, 80 Fed. Cl. 164, 177 (Fed. Cl. 2008). In limited circumstances, this Court is allowed to grant declaratory relief in bid protests pursuant to 28 U.S.C. § 1491(b)(2), or in cases where the declaratory relief requested is "an incident of and collateral" to a money judgment. James v. Caldera, 159 F.3d 573, 580-81 (Fed. Cir.1998). Except in strictly limited circumstances, there is no provision in the Tucker Act authorizing the Court of Federal Claims to order equitable relief unrelated to a monetary claim. Massie v. United States, 226 F.3d 1318, 1321 (Fed. Cir. 2000); Katz v. Cisneros, 16 F.3d 1204, 1208 (Fed. Cir.1994). Further, even if the relief being sought deals with the payment of money, the Tucker Act does not provide this Court with the equitable power to grant prospective injunctive relief. Kanemoto v. Reno, 41 F.3d 641 (Fed. Cir. 1994) (citing Bowen v. Massachusetts, 487 U.S. 879, 901-909 (1988)). Thus, it is not enough that the court's decision may affect the disposition of a monetary claim pending elsewhere, or that the court's decision will ultimately enable the plaintiff to receive money from the government, a

plaintiff must be seeking a money judgment. Nat'l Air Traffic Controllers Ass'n v. United States, 160 F.3d 714, 716 - 717 (Fed. Cir. 1998).

North Hills is seeking the sort of declaratory and injunctive relief that this Court cannot provide. North Hills requests that this Court order HUD to apply an interpretation of its own contracts prospectively and with regard to all Section 202 owners, not just North Hills. Compl. ¶¶ 43, 44. Specifically, North Hills asks this Court to "require HUD to consider budgeted vacancies when considering budget-based rent increases and that HUD should be required to transmit to each owner and management agent of Section 202 properties said change in policy and practice." Compl. ¶ 43. Similarly, North Hills requests that "this Court require HUD to develop and transmit a form whereby other Section 202 properties may submit to HUD a claim for reimbursement of accumulated debt or operating deficiencies resulting from insufficient subsidies." Compl. ¶ 44. In its request for relief, North Hills seeks "a declaration of rights pursuant to its Project Rental Assistance Contract with HUD [and] that this Court order such remedies as are necessary to insure HUD's future compliance with the contract . . . ." Compl. Prayer for Relief. Because North Hills is seeking prospective relief regarding all Section 202 contracts, North Hills is not seeking relief which is incident to a money judgment, but is requesting the sort of declaratory and injunctive relief that this Court may not provide.

In short, alleging a breach of contract pursuant to the Tucker Act does not provide this Court with the power to provide general declaratory or injunctive relief. The Declaratory Judgment Act does not provide the Court with that power, either. Because North Hills has failed to identify any source for this Court's alleged authority to provide the declaratory and injunctive relief North Hills seeks, North Hills's requests for relief should be dismissed.

## II. NORTH HILLS HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED BECAUSE THE PRAC EXPRESSLY LIMITS THE AMOUNT NORTH HILLS MAY RECEIVE FOR VACANCIES

The PRAC specifically defines the terms by which an owner may receive rental assistance for operating expenses arising from vacancies. Compl., Exhibit A, § 2.4. However, North Hills seeks additional rental assistance beyond that provided by section 2.4 of the PRAC. Compl. ¶¶ 39-41. Because North Hills misinterprets the PRAC, the complaint should be dismissed pursuant to RCFC 12(b)(6) because North Hills has failed to state a claim upon which relief may be granted.

When a plaintiff can prove no set of facts that would warrant the requested relief, dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Whalen v. United States, 80 Fed. Cl. 685, 688 (2008). In reviewing a complaint under this standard, a court accepts as true the allegations of the complaint, but need not assume that the plaintiff can prove facts different from those alleged in the complaint. Associated Gen. Contractors v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1982). Indeed, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). The alleged facts must state a claim for relief that is "plausible" not merely "conceivable." Id. at 1974.

The "intention of the parties to a contract controls its interpretation." Firestone Tire & Rubber Co. v. United States, 444 F.2d 547, 551 (Ct. Cl. 1971). A court's "ultimate goal is always to give full force and effect to the expressed or implied intentions of the contracting parties." Massachusetts Port Auth. v. United States, 456 F.2d 782, 784 (Ct. Cl. 1972). "Contract interpretation begins with the plain language of the agreement." Foley Co. v. United States, 11

F.3d 1032, 1034 (Fed. Cir. 1993); Keco Indus., Inc. v. United States, F.2d 838, 842-43 (Ct. Cl. 1966) (a contract is "to be read from its four corners"). In construing a contract, the courts give the "'words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternate meaning.'" Jowett, Inc. v. United States, 234 F.3d 1365, 1368 (Fed. Cir. 2000) (citations omitted); see also McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996). "When the contract language is unambiguous on its face, [the court's] inquiry ends, and the plain language of the contract controls." Hunt Constr. Group, Inc. v. United States, 281 F.3d 1369, 1373 (Fed. Cir. 2002); Alaska Pulp & Lumber Co., Inc. v. Madigan, 2 F.3d 389, 392 (Fed. Cir. 1993).

Similarly, the Court should "interpret the contract in a manner that gives meaning to all of its provisions and makes sense." McAbee Constr., 97 F.3d at 1435. "'[A]n interpretation which gives a reasonable meaning to all of its parts will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result"' Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991) (quoting Arizona v: United States, 575 F.2d 855, 863 (Ct. Cl. 1978)). Further, when language of a contract specifically addresses a particular issue, there is manifested an intention that the issue has been addressed fully in that provision. United Pac. Ins. Co. v. United States, 204 Ct. Cl. 938, 497 F.2d 1402, 1406 (1974); J.W. Bateson Co. v. United States, 450 F.2d 896, 902 (Ct. Cl. 1971) ("The general pattern in the later specific provisions, above quoted, supports this result, as does the well known rule that expressio unius est exclusio alterius.. It is significant that where corrosion-resisting steel is required, it is specifically called out in the later directly applicable provisions."); Gibbons & Kelly v. United States, 2 U.S. Cong. Rep. C.C. 29, 1856 WL 4062, 4072 (Ct. Cl. July 25, 1856).

The PRAC states that its purpose is "to provide rental assistance payments on behalf of Eligible Families leasing decent, safe and sanitary units from the Owner."[2] Compl., Exhibit A (emphasis added). Section 2.4, which provides the criteria for "Project Rental Assistance To Owners," specifies that project assistance payments "shall be paid" for units "under lease for occupancy." Compl., Exhibit A, § 2.4(a). Thus, the clear objective of the PRAC is to provide project assistance payments for the occupancy of qualified units.

Section 2.4(b) provides that, if a unit is not leased as of the effective date of the PRAC, the owner is entitled to assistance payments in the amount of 50 percent of the operating expense for that unit for a vacancy period not exceeding 60 days from the effective date.[3] Compl., Exhibit A, § 2.4(b). Following this 60 day period (after rent up), an owner can get payments from HUD for vacancies at units that were once occupied, but have been vacated, limited to the first 60 days of vacancy. Compl., Exhibit A, § 2.4(c). Thus, the conditions in which an owner may receive payment for vacancies is expressly limited in amount - 50 percent of the operating expense for that unit - and in time - 60 days following the effective date of the contract or time of a subsequent vacancy.[4]

North Hills is seeking payment for vacancies after the initial rent up period and for units that have never been occupied, precluding its eligibility to vacancy payments under 2.4(b) or (c).

---

[2] See also, Compl., Exhibit A, § 2.2(a)(1) (Under provision entitled "Families To Be Housed," PRAC provides that HUD will make rental assistance payments on behalf of Families to "lease Decent, Safe, and Sanitary housing.")

[3] The PRAC refers to "Vacancies During Rent-up." Compl., Exhibit A, § 2.4(b). "Rent-up" is the 60 day period following the effective date of the PRAC.

[4] Even then, to be eligible for vacancy payments, an owner must provide assurance that, among other things, it has "taken and continues to take all feasible actions to fill the vacancy." Compl., Exhibit A, §§ 2.4(b)(2), (c)(3)(iii).

Compl. ¶¶ 39-41. However, that section 2.4 of the PRAC expressly limits rental assistance for vacancies suggests that issue has been addressed fully in that provision of the contract. United Pac. Ins., 497 F.2d at 1406; J.W. Bateson, 450 F.2d at 902. Therefore, North Hills improperly seeks to add provisions and expand HUD's liability for rental assistance payments beyond those expressly stated in the PRAC.

Further, any interpretation that provides owners with additional payments for vacancies would frustrate the purpose of the PRAC. The express goal of the PRAC is to provide "rental assistance payments on behalf of Eligible Families leasing decent, safe and sanitary units from the Owner." Compl., Exhibit A (emphasis added). By maximizing project rental assistance for occupied units, the PRAC provides an incentive to owners to make sure that units are occupied to the maximum extend possible. If HUD paid more for the operating costs arising from vacant units, owners, like North Hills, would have less incentive to lease units to qualified renters, thus defeating the primary purpose of the PRAC.

North Hills argues that other provisions of the PRAC require that HUD pay more for vacancies. Compl. ¶ 27-29.[5] First, North Hills claims that section 2.3(b)(2), which provides that HUD will take steps to assure that payments under the PRAC will be sufficient to cover operating expenses whenever a HUD-approved estimate exceeds the maximum annual commitment for that fiscal year, obligated HUD to pay for more for vacancies.[6] Compl. ¶ 27. North Hills has not alleged, nor are we aware of any evidence to suggest, that a "HUD-approved

---

[5] North Hills also refers to section 1.3 of the PRAC which provides that the full faith of the United States is solemnly pledged to the payment of project rental assistance payments. Compl. ¶ 30. This provision is not relevant to this case or rescue North Hills's claim.

[6] Section 1.1(c) provides a maximum annual contract commitment for project assistance payments. Compl., Exhibit A, § 1.1(c).

estimate of the required payments for a fiscal year" has exceeded the maximum annual commitment for any year. Further, and in any event, that obligation would not require HUD to pay for the operating expenses arising from all vacancies. Thus, this provision is simply irrelevant.

North Hills cites section 2.7, which provides for operating expense adjustments "based on the sum of the costs for operating the project (as approved by HUD) with adjustments for vacancies, the project's non-rental income, and other factors that HUD deems appropriate" to argue that HUD is required to accept an additional adjustment for vacancies beyond that provided in section 2.4.[7] Compl. ¶¶ 28-29 (emphasis added). The discretion afforded to HUD in this provision cannot be reconciled with North Hills's claim that HUD is required to make an additional adjustment for vacancy expenses. Additionally, the reference to "adjustments for vacancies" does not require HUD to compensate North Hills for vacancies beyond the compensation already provided in section 2.4. Courts should interpret contracts in a manner that gives meaning to all of its provisions and that makes sense while avoiding interpretations which leaves a portion of the contract useless, inexplicable, inoperative, void, or insignificant. McAbee Constr., 97 F.3d at 1435; Gould, 935 F.2d at 1274. Because North Hills is relying upon an interpretation which renders section 2.4 of the PRAC largely superfluous, it should be rejected.

---

[7] Section 2.4(a) of the PRAC also provides that project assistance payments, which are provided to cover the difference between operating expenses and tenant payments, is to be determined in accordance with the "HUD-established schedules and criteria." Compl., Exhibit A, § 2.4(a).

Similarly, North Hills contends that Section 202 of the Housing Act of 1959, 12 U.S.C. § 1701q, et seq., requires HUD to approve its rent increase request. Compl. ¶¶ 9, 22, 32.[8] As a threshold matter, this Court and the Federal Circuit Court of Appeals have been reluctant to find that statutory provisions are incorporated into a contract absent the parties' clear intention to incorporate such provisions into the contract. See Smithson v. United States, 847 F.2d 791, 794 (Fed. Cir. 1988) (Farmers Home Administration regulations were not incorporated into a contract); see also Kennedy Heights Apartments. Ltd. v. United States, 48 Fed. Cl. 574, 578-79 (2001). If it were the parties' purpose to have included certain statutes or regulations into the contract, "they would have explicitly so provided." Smithson, 847 F.2d at 794; see also Nat'l Leased Hous. Assoc. v. United States, 32 Fed. Cl. 762, 766 (1995), aff'd, 105 F.3d 1423 (Fed. Cir. 1997).

However, the provision to which North Hills cites does not support its claim. The relevant portion of this statute provides:

> Contracts for project rental assistance shall obligate the Secretary to make monthly payments to cover any part of the costs attributed to units occupied (or, as approved by the Secretary, held for occupancy) by very low-income elderly persons that is not met from project income. The annual contract amount for any project shall not exceed the sum of the initial annual project rentals for all units so occupied and any initial utility allowances for such units, as approved by the Secretary. Any contract amounts not used by a project in any year shall remain available to the project until the expiration of the contract. The Secretary may adjust the annual contract amount if the sum of the project income and the amount of assistance payments available under this paragraph are inadequate to provide for reasonable project costs.

12 U.S.C. § 1701q(c)(2) (emphasis added). The first sentence of this subsection, which provides that project rental assistance is for the costs of "units occupied" while units "held for occupancy"

[8] Although North Hills cited 12 U.S.C. § 1707q several times, Compl. ¶¶ 8, 22, 26, 32, we believe it meant to cite 12 U.S.C. § 1701q.

are paid for only "as approved by the Secretary," mirrors section 2.4 of the PRAC which provides for the indefinite payment for units that are occupied but limited payment for vacancies. Thus, the statute supports the contention that HUD is not required to compensate owners for vacancies beyond that provided in the PRAC. Further, this section provides that HUD "may" adjust the amount provided to an assisted project if current funding "is inadequate to provide for reasonable project costs." 12 U.S.C. § 1701q(c)(2). Thus, this language does not require HUD to provide additional funding at all.

Furthermore, North Hills alleges that HUD's Handbook is contrary to the PRAC. Compl. ¶ 26. HUD's stated reason for denying North Hills' request for a rent increase request was based upon the policy stated in HUD Handbook 4350.1, concerning HUD multifamily asset management and project servicing. Compl., Exhibit G. Section 7-30(M) of the Handbook provides that, in reviewing rent increase requests based on project expenses, HUD will not consider vacancies at a project which receives full Section 8 funding. Because the Project receives full Section 8 assistance, HUD determined that North Hills was not entitled to increase rent based on vacancies. Compl., Exhibit G. However, contrary to North Hills' allegations, this policy is consistent with, not contrary to, the terms of the PRAC. Section 2.4(a)(1) of the PRAC states that assistance payments shall be paid to the owner for "units under lease for occupancy" and provides that the amount of each payment shall be made "in accordance with the HUD-established schedules and criteria." Compl., Exhibit A, § 2.4(a)(1). Section 2.4(b) and (c) specifically addresses project vacancies, providing, at most, 50 percent of the operating expense for a vacancy period not to exceed 60 days. Compl., Exhibit A, § 2.4(b), (c). The PRAC does not require HUD to make additional payments to compensate for the operating expenses from vacant units that have not been occupied for more than 60 days. Further, Section 2.7(a), which

provides that assistance payments will be increased based on changes in project operating expenses, it also explicitly indicates that such increases will be based on a variety of factors, including "other factors that HUD deems appropriate." Compl., Exhibit A. § 2.7(a). Given this discretion as well as the explicit limitations upon assistance payments arising from vacancies that is set forth in Sections 2.4(b) and (c), the PRAC cannot be reasonably read to require HUD to approve North Hills' requested rent increase.

To survive a motion to dismiss, North Hills must state a plausible claim for relief. Bell Atl. Corp. , 127 S. Ct. at 1974. As demonstrated above, North Hills's allegations fail to support a cause of action that is consistent with the plain meaning of the PRAC. Consequently, North Hills has not alleged a cause of action upon which this Court may grant relief.

**CONCLUSION**

For these reasons, we respectfully request the Court to dismiss the complaint.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Patricia M. McCarthy
PATRICIA M. MCCARTHY
Assistant Director

s/Russell A. Shultis
RUSSELL A. SHULTIS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 305-7571
Facsimile: (202) 305-7643

OF COUNSEL:
CHRISTOPHER R. OPFER
Trial Attorney
Department of Housing
& Urban Development
Office of Litigation
500 Zack Street
Suite 402
Tampa, FL 33602

August 29, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 29th day of August 2008, a copy of foregoing "DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Russell A. Shultis